**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
SOUTHWESTERN DIVISION**

| | | |
|---|---|---|
| William Pipes, Brittany Pipes, Briana Pipes, Takoda Pipes, Isaiha Pipes, and Colton Pipes, | ) ) ) ) | |
| Plaintiffs, | ) ) | **REPORT AND RECOMMENDATION** |
| vs. | ) ) ) | |
| State of North Dakota, JRCC, Don Redmann, Leann Bertsch, Virginia Kleven, and Vicki Steckler, | ) ) ) ) | Case No. 1:07-cv-00067 |
| Defendants. | ) ) | |

Plaintiff, William Pipes ("Pipes"), is currently an inmate at the James River Correction Center ("JRCC"). He has filed a *pro se* complaint pursuant to 42 U.S.C. § 1983, naming also five of his children – Brittany, Briana, Takoda, Isaiha and Colton – as co-plaintiffs. In addition, he has filed a Motion to Proceed *In Forma Pauperis*. The case is now before the court for the screening mandated by 28 U.S.C. §1915A.

**I.     BACKGROUND**

This is the second federal civil rights case that Pipes has filed since being housed at the JRCC. In the first case (Case No. 1:07-cv-00057), Pipes attempted to sue some sixteen different defendants on at least twenty different claims, a number of which were unrelated to others. Several of the claims asserted in this case are related to the claims made in the other action, albeit against different defendants.

1

## II.     STANDARDS GOVERNING INITIAL REVIEW

Congress enacted the Prison Litigation Reform Act of 1995 ("PLRA") to address the burdens imposed by prisoner suits that too often are frivolous and without merit. Jones v. Bock, __ U.S. __,127 S.Ct. 910, 914 (2007); Woodford v. Ngo, __ U.S.__, 126 S.Ct. 2378, 2382 (2006). One of the reforms enacted as part of the PLRA for cases in which prisoners are seeking to sue a governmental entity, officer, or employee is the requirement that courts conduct an early screening to weed out claims that clearly lack merit - prior or soon after the complaint is filed.   28 U.S.C. § 1915A.  In conducting the screening, the court is required to identify any cognizable claims and to dismiss the complaint, or any part of it, that is frivolous, malicious, fails to state a claim, or seeks monetary relief from an immune defendant. Id.

In enacting the PLRA, Congress chose not to impose any heightened pleading requirements for prisoner complaints, and, in this case, 42 U.S.C. § 1983 does not impose such requirements. Jones v. Bock, __ U.S. __,127 S.Ct. 910, 919 (2007).  Consequently, to state a cognizable claim, the complaint need only meet the minimal requirements of Fed. R. Civ. P. 8(a), which are that it contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Erickson v. Pardus, __ U.S. __, 127 S.Ct. 2197, 2202 (2007) (*per curiam*). In addition, when a prisoner is proceeding *pro se*, the court is obligated to construe the complaint liberally and hold it to a less stringent standard than what would be required of attorneys. E.g., Erickson v. Pardus, 127 S.Ct. at 2202. The court may not dismiss a *pro se* complaint unless it "appears beyond doubt that plaintiff can prove no set of facts that would demonstrate an entitlement to relief." Gordon v. Hansen, 168 F.3d 1109, 1113 (8th Cir. 1999); see also Haley v. Dormire, 845 F.2d 1488, 1490 (8th Cir. 1988).

Nevertheless, even though the pleading requirements are minimal and complaints are to be liberally construed, this does not mean the court must accept anything and everything that is filed by a *pro se* prisoner. In enacting the screening requirement, Congress expected it to be more than a ritualistic exercise and that the courts would be vigilant in allowing prisoners to proceed only with those claims that state a cognizable claim, that seek relief from a non-immune party, and that are not obviously baseless, frivolous, or malicious.

"A complaint is frivolous if it lacks an arguable basis in law or fact." Martinez v. Turner, 977 F.2d 421, 423 (8th Cir. 1992) (citing Nietske v. Williams, 490 U.S. 319, 325 (1989)). "It lacks an arguable basis in law if the claim is based on an indisputable meritless legal theory." Id. And, in terms of whether there is an arguable basis in fact, the court may disregard any factual allegations that are clearly fanciful, fantastic, or delusional. See Denton v. Hernandez, 504 U.S. 25, 32-34 (1992); Edwards v. Snyder, 478 F.3d 827, 229-830 (7th Cir. 2007) (discussing the difference between factual and legal frivolousness).

To meet the minimal requirements of Rule 8(a)(2) for pleading a cognizable claim, something more is required than simply expressing a desire for relief and declaring an entitlement to it. See Bell Atlantic Corp. v. Twombly, 550 U.S. __, 127 S.Ct. 1955, 1965 n.3 (2007). At the very least, even *pro se* prisoners must state enough to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." Erickson v. Pardus, 127 S.Ct. at 2200 (quoting Bell Atlantic Corp. v. Twombly, 127 S.Ct. at 1964). In the case of action for a violation of federal civil rights under 42 U.S.C. § 1983, this means a plaintiff must allege a violation of a right secured by the Constitution or the laws of the United States and that the violation was committed by a person acting under color of state law in order to state a cognizable claim. West v. Atkins, 487 U.S. 42, 48

(1988); Walker v. Reed, 104 F.3d 156, 157-158 (8th Cir. 1997). Also, the pleading must allege a sufficient causal link between the alleged violation and the basis upon which a particular defendant is to be held responsible, keeping in mind that persons sued in their individual capacities must be personally involved or directly responsible given that § 1983 does not impose *respondeat superior* liability. Gordon v. Hansen, 168 F.3d 1109, 1113 (8th Cir. 1999); Madewell v. Roberts, 909 F.2d 1203, 1208 (8th Cir.1990); Martin v. Sargent, 780 F.2d 1334, 1337-39 (8th Cir.1985).

Finally, even though the court is obligated to construe *pro se* complaints liberally, the court is not required to ignore facts that are pled by a prisoner when they undermine the prisoner's claim. The court may accept as true all facts pled in the complaint and conclude from them that there is no claim stated as a matter of law. E.g., Edwards v. Snyder, 478 F.3d at 830; Thompson v. Illinois Department of Professional Regulation, 300 F.3d 750, 753-754 (7th Cir. 2002) (citing other cases).[1]

## III.  DISCUSSION

The complaint filed by Pipes is approximately forty pages in length and contains several narratives in which Pipes attempts to describe his claims. The lack of reference to any particular federal constitutional or statutory right, however, makes it difficult to discern exactly what his claims are.

---

[1] In Edwards v. Snyder, the Seventh Circuit stated the following:
Complaints may be susceptible to dismissal for failure to state a claim for various reasons. For example, a plaintiff may allege too little in his complaint and fail to meet the minimal federal pleading requirements. See Fed. R. Civ. P. 8. Even if a complaint passes the minimal threshold of pleading standards, dismissal for failure to state a claim may be appropriate if it "appears beyond doubt that the plaintiff can prove no set of facts that would entitle him to relief." Marshall v. Knight, 445 F.3d 965, 968 (7th Cir.2006); Dealt v. Carter, 224 F.3d 607, 610 n. 1 (7th Cir.2000). A complaint can also allege too much; a plaintiff may unwittingly plead himself out of court by alleging facts that preclude recovery. See McCreary v. BAY, Inc., 453 F.3d 882, 888 (7th Cir.2006).
478 F3d at 830.

On November 16, 2008, the court conducted a telephonic screening hearing to seek clarification from Pipes regarding a number of the claims made with respect to his first complaint and the complaint filed in this action. [2]  What follows is the court's identification of what appears to be claims that are possibly cognizable under § 1983 construing what Pipes has pled most liberally in his favor.  To the extent that Pipes believes claims have been overlooked or omitted, he can try again by filing either a motion to amend the complaint or a separate action.

### A.     Individual claims

#### 1.     Claims related to the imposition of prison discipline (Claim #1)

Pipes complains that he was wrongly placed in detention in July of 2007 by defendant Warden Redmann in violation of prison regulations.   By itself, this would not be enough to state a claim for violation of federal constitutional rights cognizable under § 1983.  See Phillips v. Norris, 320 F.3d 844, 847 (8th Cir. 2003) (no federal constitutional liberty interest in having prison officials follow state law or prison regulations).  It appears, however, that Pipes is also pleading facts that suggest his placement in detention was an infringement upon his free speech and petition rights and/or was in retaliation for the exercise of those rights.  This is enough to state a cognizable claim considering the fact that Pipes is proceeding *pro se*.  See McCauley v. Dormire, 2007 WL 2404729, *2 (8th Cir. 2007) (unpublished *per curiam* decision); Moore v. Plaster, 266 F.3d 928, 931-933 (8th Cir.2001).  Consequently, this claim should be permitted to proceed beyond the screening stage.

---

[2] In conducting the screening hearing, no attempt was made to resolve facts that may be disputed and, like the complaint, what Pipes claimed during the hearing has been assumed as being true for purposes of this report and recommendation.

### 2.     Claim of denial of access to the courts (Claim #2)

Pipes claims that he is being denied adequate postage to pursue his legal challenges. From everything the court has reviewed so far in connection with both this complaint and his earlier complaint, it appears Pipes has been able to make numerous mailings to government officials and law enforcement officers, legal counsel, and the courts while incarcerated at the JRCC. Further, at least as of this point, it does not appear that Pipes' ability to pursue the two actions pending in this court has been compromised, although he has recently complained in separate correspondence (which he apparently was able to mail) that his lack of money for postage is prohibiting him from filing a response to the report and recommendation recently issued in his other action.

To the extent that Pipes believes he is constitutionally entitled to postage to send unlimited amounts of mail, he is wrong. Prisoners do not have a right to unlimited free postage. Johnson v. Goord, 445 F.3d 532, 534 (2nd Cir. 20060; Smith v. Erickson, 884 F.2d 1108, 1111 (8th Cir. 1989) (citing Gaines v. Lane, 790 F.2d 1299, 1308 (7th Cir. 1986)). And, while it is true that there are greater rights with respect to legal mail because of the constitutional obligation to provide prisoners with access to the courts, e.g., Bounds v. Smith, 430 U.S. 817, 824 (1977); Smith v. Erickson, 884 F.2d 1108, 1110 (8th Cir. 1989), correction facilities may adopt policies based upon budgetary concerns that encourage inmates to use their own resources and to manage their money intelligently. Harrison v. Bent County Correctional Facility, 24 Fed.Appx. 965, 967 (10th Cir. 2001) (unpublished disposition); Blaise v. Fenn, 48 F.3d 337 (8th Cir. 1995). This includes regulations that require prisoners to pay for mailings from their prison spending accounts with monies earned from prison work so long as there are appropriate safeguards to ensure that prisoners suffer no injury with respect to meritorious claims.

At this point, it cannot be that there is no set of facts that Pipes could prove to make out a denial of access to the courts claim. Cf. Smith v. Erickson, 884 F.2d at 1111. Consequently, this claim should be allowed to go forward. Pipes needs to be aware, however, that he will likely have to show a demonstrable injury to a meritorious claim in order to prevail. And, to prove a demonstrable injury, he will likely have to prove more than simply that he suffered a delay in filing a new action or motions or briefs in an action already pending.[3] Harrison v. Bent County Correctional Facility, 24 Fed.Appx. at 967 (stating an inability to file motions and briefs is not by itself sufficient proof of injury); Blaise v. Fenn, 48 F.3d at 340.

### 3. Alleged monitoring of attorney-client conversations (Claim #3)

Pipes contends that jail staff refused to provide him with a secured telephone line on which he could speak privately with his attorney. During the screening hearing, Pipes described how the calls he attempted to make were monitored in some fashion and, at this point, the court must accept Pipes' allegations as true.

Prohibiting all unmonitored telephone contact with an attorney may, in certain circumstances, give rise to a Sixth Amendment claim.[4] Cf., Ching v. Lewis, 895 F.2d 608, 609-10

---

[3] On the other hand, if a prisoner can demonstrate to prison officials that he or she has a court deadline to meet and the proposed mailing is to meet that deadline, it may be prudent from a management standpoint to front the postage money and not take the chance that the prisoner will later be able to prove that the claim had potential merit and that the prisoner suffered injury - not to mention the time and expense of maintaining a defense to such a claim even if the claim is ultimately unsuccessful.

[4] If the prisoner was aware that a phone call with an attorney was being monitored, the mere monitoring of a particular phone call, without more, does not violate a prisoner's Sixth Amendment rights. Cf. United States v. Hatcher, 323 U.S. 666, 674 (8th Cir. 2003) (stating that the presence of a recording device is the functional equivalent of the presence of a third party); see also United States v. Chaibon, No. 2:06-cr-00091-RLH-PAL, 2007 WL 437704 at *20-21 (D. Nev. February 2, 2007) (finding the Eighth Circuit's reasoning in Hatcher persuasive); United States v. Thompson, No. 07-30010, 2007 WL 2700016 at *1-3 (C.D. Ill. August, 9, 2007) (same); United States v. Lentz, 419 F.Supp.2d 820, 828-29 (E.D. Va. 2005) (holding inmates waive any privilege protection for telephone conversations when they proceed with conversations in the face of notice that the calls are being recorded and subject to monitoring); United States v. Noriega, 917 F.2d 1543, 1551 & n.10 (11th Cir. 1990).

(9th Cir. 1990) (holding that an inmate had the right to a contact visit with his attorney for confidential in-person communications, notwithstanding his ability to communicate confidentially with his attorney through mail or over the telephone). Also, there may be First Amendment implications. See, e.g., Washington v. Reno, 35 F.3d 1093, 1099 -1100 (6th Cir. 1994). Construing the allegations most favorably for Pipes, he appears to be alleging that he was effectively prohibited from having any unmonitored telephone calls with his attorney. Of course, whether this is true or not remains to be seen. But, assuming the truth of the allegations, at this point there may be no set of facts that Pipes could prove that would demonstrate an entitlement to relief. Consequently, Pipes should be permitted to proceed with this claim beyond the screening stage.

**4.     Claim of failure to investigate alleged civil rights violations (Claim #4)**

In Pipes' first action, he attempted to sue Steve Engen and Dale Maixner for their failure to investigate Pipes' allegations that his civil rights were violated while he was being held in the Mountrail County jail in Stanley, North Dakota. Engen is employed by the defendant North Dakota Department of Corrections and Rehabilitation (NDDOCR) and Maixner is an agent of the North Dakota Bureau of Criminal Investigation. According to Pipes, he brought the alleged violations of his civil rights to the attention of Agent Maixner, who allegedly promised Pipes that he would be contacted by Steve Engen. Pipes is upset over the fact that Engen never contacted him and that no investigation was conducted by either Engen or Maixner.

In this action, Pipes seeks relief against two JRCC officials (Sue Lloyd and Vicki Steckler) and the director of the NDDOCR (Leann Bertsch) for their failure to do something after he filed grievances over the fact that Engen failed to take action. Pipes' Step 1 grievance was denied by Lloyd, his Step 2 grievance was denied by Steckler, and Bertsch denied the administrative appeal

from the denial of the Step 1 and Step 2 grievances. In particular, Pipes complains that, instead of being granted relief, he was advised by JRCC officials to either write Engen, consult with his own attorney, or bring the alleged violations to the attention of the appropriate state's attorney - suggestions that Pipes characterizes as being "lame."

As pointed out in the report and recommendation with respect to Pipes' complaint in his other action, private citizens have no constitutional or other right to right to a criminal investigation. Mitchell v. McNeil, 487 F.3d 374, 378 (6th Cir. 2007) ("There is no statutory or common law right, much less a constitutional right, to an investigation."); Koger v. Florida, 130 Fed.Appx. 327, 335, 2005 WL 1027204, *6 (11th Cir. 2005); cf. Linda R.S. v. Richard D., 410 U.S. 614, 619 (1973) ("a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another"); Dohaish v. Tooley, 670 F.2d 934, 935 (10 th Cir. 1982); Fulson v. City of Columbus, 801 F. Supp. 1, 6 (S.D. Ohio 1992) ("Thus, courts have generally declined to recognize standing on the part of victims of crimes to bring a § 1983 action based upon lack of prosecution of others.") Morever, even if there was such a right, it is readily apparent that the defendants named in this action would have no duty, much less the power, to take action. In fact, the advice that they gave Pipes in terms of consulting his own attorney or reporting his complaints to the appropriate state's attorney was sound.

This claim is legally frivolous and should be dismissed.

### 5. Claim for failure to provide prison litigation forms (Claim #5)

Pipes claims that, at one point, the law librarian at the JRCC, defendant Virginia Kleven, refused to give Pipes and several other JRCC inmates packets that contain forms for bringing a federal civil rights action. Pipes claims that Kleven gave conflicting responses regarding the

9

availability of the forms and told him he did not have to use the forms. He also claims that, when another inmate asked for the standard forms, Kleven asked the other inmate: "This isn't for William Pipes is it?"

Pipes does not state what federal constitutional provision he claims was violated by the alleged failure to provide the litigation packets. He merely claims that Kleven should be held accountable for her "negligence." Mere negligence, however, is not enough to give rise under § 1983 for a claim of violation of constitutional rights. E.g., Walker v. Reed, 104 F.3d 156, 157-158 (8th Cir. 1997) (citing Daniels v. Williams, 474 U.S. 327, 328 (1986)).

Morever, the litigation packets that Pipes refers to are ones that are provided by this court for use by prisoners as a matter of convenience. There is no obligation on the part of the JRCC to make them available, and what Kleven purportedly told Pipes is true: Prisoners are not required to use the forms and may prepare their own complaints. In addition, the court also notes that, despite Pipes' alleged claim of difficulty in obtaining the packets, Pipes has managed to file two actions with this court using the standard forms.[5]

Pipes has failed to state a claim that is cognizable under § 1983 against defendant Kleven. Consequently, this claim should be dismissed.

### 6. Claim that two speedy trial demands may not have been processed (Claim #6)

Pipes alleges that defendant Cathy Jensen *may* not have processed speedy trial requests with respect to two of nine detainers that had been filed with the NDDOCR, all of which relate to

---

[5] Pipes claims that Kleven told him she did not have any forms on the particular occasion he complains about. While Pipes believes this to be untrue, it may very well have been that the JRCC was temporarily out of the packets provided by this court. The court need not resolve this factual issue, however, since the failure to provide the forms, even if true, does not amount to a violation of Pipes's constitutional rights.

outstanding state or local criminal charges. Pipes is not sure and states that he wants to bring this matter to the attention of the court in the event that the two detainers have not been properly processed.   The United States Supreme Court in Younger v. Harris has instructed that federal courts must abstain from proceeding with cases that would interfere with ongoing state criminal proceedings, except in very unusual circumstances. E.g., Younger v. Harris, 401 U.S. 37, 43-54 (1971); see Night Clubs, Inc. v. City of Fort Smith, Ark., 163 F.3d 475, 479 (8th Cir. 1998). In this case, it is clear from the proposed complaint that the unusual circumstances contemplated under Younger are not present. No allegation is made that the state courts are not capable of granting him the necessary relief if his speedy trial rights have been violated, much less any allegation of systemic problems that would justify the extraordinary step of a federal court intervention in a state criminal prosecution. See id.; Canatella v. California, 404 F.3d 1106, 1112 (9th Cir. 2005). Consequently, Pipes does not have a cognizable claim for equitable relief until the state criminal proceedings have been completed. This includes completion of any state court appeals. E.g., Warmus v. Melahn, 62 F.3d 252, 257 (8th Cir.1995), vacated on other grounds, 517 U.S. 1241(1996); Simpson v. Rowan, 73 F.3d 134, 138 (7th Cir.1995). Further, to the extent that Pipes may seek release from custody, his only federal remedy is a petition for writ of habeas corpus - not a § 1983 action. E.g., Wilkinson v. Dotson, 544 U.S. 74, 78-82 (2005). And, before a federal court would entertain a writ of habeas corpus, he would have to exhaust his state court remedies. E.g., Rhines v. Weber, 544 U.S. 269, 274 (2005); Dixon v. Dormire, 263 F.3d 774, 777 (8th Cir. 2001). In this case, it is clear he has not done so.

      This claim should be dismissed for failure to state a claim and as being legally frivolous.

### 7. Claim against the JRCC for "forcing" Pipes to go with Mountrail County officers to attend a state court hearing in Mountrial County (Claim #7)

Pipes complains about his being forced to attend a state court hearing in Mountrail County in the temporary custody of Mountrail County Sheriff's Office. Pipes states he advised JRCC personnel that Mountrial County officials had previously violated his constitutional rights while he was incarcerated in Mountrail County as a pretrial detainee and that his life would be in jeopardy if he was transported to the court hearing by the Mountrail County deputies. He further claims that, while he was at the Mountrail County Courthouse awaiting the state court hearing, a Mountrail County deputy threatened to shoot him and that this threat was made in the presence of another deputy.

During the court's telephonic hearing, Pipes acknowledged that nothing actually happened while he was in the temporary custody of the Mountrail County officials, except for the alleged threat by the deputy that he would shoot him. And, with respect to this threat, Pipes acknowledged he did not feel in any present danger and that he understood the threat to be that he might be shot at some time in the future.[6]

Pipes does not state what federal constitutional provision he claims was violated when he was entrusted to the temporary custody of the Mountrail County officials. He merely alleges that the "JRCC was negligent in allowing Mountrail Co. to transport me." However, as already noted, mere negligence is not enough to give rise under § 1983 for a claim of violation of constitutional rights. E.g., Walker v. Reed, 104 F.3d 156, 157-158 (8th Cir. 1997) (citing Daniels v. Williams, 474

---

[6] Most likely, any comment made by the Mountrail County deputy was made either in jest or as a matter of exasperation. Given what Pipes alleged in his other action, which is directed primarily against the Mountrail County Sheriff's Office, the court can envision one of the officers making a statement to the effect that next time it would be just easier to shoot Pipes. Whether this was the context in which the statement was made need not be determined given what Pipes related during the screening hearing. While the comment, if made, may have been unprofessional, it is clear that it does not rise to the level of being a violation of Pipes' constitutional rights.

U.S. 327, 328 (1986)). And, if Pipes is attempting to make an Eighth Amendment "failure to protect" claim, he has not alleged a serious enough threat to constitute an Eighth Amendment violation given his description of the events during the screening hearing. Doe v. Magnuson, 2005 WL 758454, *15-16 (D. Me. 2005) (no Eighth Amendment claim in the absence of a substantial threat of danger).[7]

This claim should be dismissed as being both legally and factually frivolous.

### 8. "Bad tooth" claim (Claim #8)

Pipes claims he has a bad tooth that hurts a lot and that the JRCC officials will only provide for an extraction and not a less-invasive procedure that might save the tooth. In Pipes' first action, he is suing the Mountrail County Sheriff's Office for following the same alleged "extraction-only" policy.

The Eighth Amendment requires that the government "provide medical care for those whom it is punishing by incarceration." Robinson v. Hager, 292 F.3d 560, 563 (8th Cir. 2002). In Jolly v. Knudsen, the Eighth Circuit described the extent of this constitutionally imposed duty and what is required to prove a breach as follows:

> Prison officials or their agents violate the eighth amendment if they commit "acts or omissions sufficiently harmful to evidence deliberate indifference to [an inmate's] serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). Our court has interpreted this standard as including both an objective and a subjective component: "The [plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs." Dulany v. Carnahan, 132 F.3d 1234, 1239 (8th Cir.1997). "The prisoner must show more than negligence,

---

[7] Pipes has not stated he is making a claim under state law. However, even if that was his intent, he has no state law claim since it is clear that he suffered no compensable damage. Under North Dakota law, proof of actual damages is an essential element of claim for negligence under North Dakota law. Olson v. Fraase, 421 N.W.2d 820, 827 (N.D. 1988) (holding that nominal damages may not be recovered in a negligence action since proof of actual damages is an essential element of a claim for negligence).

more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation." Estate of Rosenberg v. Crandell, 56 F.3d 35, 37 (8th Cir.1995).

Jolley v Knudsen, 205 F.3d 1094, 1096 (8th Cir. 2000).

In light of these substantive requirements, the plaintiff must allege that he or she suffered an actual or imminent injury that is sufficiently serious to give rise to an Eighth Amendment violation in order to state a cognizable claim. Smith v. Arkansas Dep't. of Corrections, 103 F.3d 637, 643 (8th Cir. 1996) (citing Lewis v. Casey, 518 U.S. 343 (1996)); see also Maurice B. Madison-Bey v. Correctional Medical Services, 180 Fed.Appx. 608, 2006 WL 1278690 (8th Cir. 2006) (unpublished *per curiam* decision upholding the dismissal of a § 1983 claim for failure on the part of the plaintiff to allege that he had suffered harm as a result of an unconstitutional policy or custom). "When the inmate alleges that a delay in medical treatment rises to the level of an Eighth Amendment violation, the objective seriousness of the deprivation should be measured by reference to the *effect* of delay in treatment." Laughlin v. Schriro, 430 F.3d 927, 929 (8th Cir. 2005).

Several courts outside the Eighth Circuit have suggested or inferred that following an extraction-only policy may give rise to an Eighth Amendment claim in certain circumstances. E.g., Chance v. Armstrong, 143 F.3d 698, 703-704 (2d Cir.1998), Simon Banks v. York, __ F. Supp. 2d __, 2007 WL 2697064, *6 (D.D.C. 2007); see O'Connor v. McArdle, 217 Fed.Appx. 81, 2007 WL 627461, *1 (2nd Cir. 2007) (summary order); Swartz v. Steinhauser,125 F.3d 859 (Table), 1997 WL 599547, *1 & n.2 (9th Cir. 1997).

Other courts, however, have held or suggested that following an extraction-only policy would not violate the Eighth Amendment. James v. Pennsylvania Dept. of Corrections, 230 Fed.Appx. 195, 2007 WL 1231730, *1-2 (3rd Cir. 2007) (unpublished *per curiam* decision) (no Eighth Amendment claim against doctor or state prison officials for an extraction that was within

the policy of providing for extractions and not root canals for abscessed teeth, and the decision was not based on any ulterior motive other than routine patient care); McQueen v. Karr, 54 Fed.Appx. 406, 2002 WL 31688891, *1 (5th Cir.2002) (affirming dismissal of a §1983 claim based on the denial of restorative treatment rather than extraction of his injured teeth); Johnson v. Alameda County Sheriff's Dept., 892 F.2d 83 (table), 1989 WL 150630, *2 (9th Cir. 1989) (no Eighth Amendment violation when prisoner was offered extraction only in lieu of a full root canal); Wilkens v. Ward, 2007 WL 2407082, *6-7 (W.D. Okla. 2007), Ball v. Johnson County Jail, 2004 WL 2338105, *2 (N.D. Tex. 2004) (extraction only option does not give rise to an Eighth Amendment claim); Kopera v. Cook County Bd. of Com'rs, 1994 WL 577238, *5 (N.D. Ill. 1994).

In the Eighth Circuit, it appears to be an open question as to whether following an extraction-only policy may give rise to an Eighth Amendment violation - at least in certain circumstances. In Davis v. Norris, 198 F.3d 249 (Table), 1999 WL 1006437, *1 (8th Cir. 1999), the Eighth Circuit concluded that offering an extraction, instead of root canal, did not violate the Eighth Amendment. Davis v. Norris, 198 F.3d 249 (Table), 1999 WL 1006437, *1 (8th Cir. 1999). But, in that case, the facts were that one examining dentist had recommended a root canal and another an extraction, and the Eighth Circuit concluded that a mere disagreement over the preferred method of treatment would not give rise to an Eighth Amendment claim. Id.; see also Moore v. Jackson, 123 F.3d 1082, 1087 n.3 (8th Cir. 1997) (expressing concern that an alleged delay in treatment may have necessitated an extraction). More recently, the issue of whether an extraction-only policy violates the Eighth Amendment was presented in Meuir v. Greene County Jail Employees, 487 F.3d 1115, 1119 (8th Cir. 2007), but the court concluded it did not have to decide the issue because the plaintiff in that case lacked standing.

It is recommended that Pipes be allowed to proceed with this claim past the screening stage given the uncertainty in the law in the Eighth Circuit. Also, additional factual development may make clear that extraction is a medically preferred treatment in this instance and that there is no constitutional issue. Davis v. Norris, supra; see also Hogan v. Russ, 890 F. Supp. 146, 149 (N.D.N.Y. 1995).

### 9. Failure to take action with respect to alleged child abuse (Claim #9)

Pipes claims that social workers at the JRCC are unlawfully refusing to report allegations of child abuse with respect to his children. Pipes claims the social workers, instead of reporting Pipes' allegations to the proper authorities, told him that he could write the authorities himself.

During the screening hearing, it became clear that Pipes has, in fact, made his allegations of child abuse known to state and federal law enforcement authorities. And, more importantly with respect to this action, Pipes cites no federal constitutional or statutory provisions requiring the social workers to take action and the court is not aware of any such obligation.

This claim should be dismissed for failure to state cognizable claim under § 1983.

### B. Individual defendants

#### 1. State of North Dakota and the JRCC

The JRCC is a part of the NDDOCR, which is a state agency. Pipes seeks damages from the JRCC in the amount of $3,250,000. It also appears that Pipes is seeking the same amount of damages from the other defendants.[8]

It is well established that states have Eleventh Amendment immunity from a suit brought under 42 U.S.C. § 1983. Monroe v. Arkansas State University, 495 F.3d 591, 594 (8th Cir. 2007);

---

[8] In Part VI of his complaint with respect to the request for relief against Warden Redmann, Pipes alleges that he is seeking $3,250,000 "for JRCC's et al actions."

Alsbrook v. City of Maumelle, 184 F.3d 999, 1010 (8th Cir. 1999). This immunity also extends to state agencies and institutions. Id. In addition, states and their agencies are not "persons" within the meaning of § 1983 and are not proper parties for this reason as well. Will v. Michigan Dept. of State Police, 491 U.S. 58, 64 & 70 (1989); Alsbrook v. City of Maumelle, 184 F.3d at 1010.

Consequently, the State of North Dakota and the JRCC should be dismissed from this action. Further, this dismissal should extend to any damage claims against the individual state officials in their official capacities since a damage claim against a state official in his or her official capacity is a suit against the state for which there is Eleventh Amendment immunity. See id.[9]

### 2. Don Redmann

Don Redmann is alleged to be the warden of the JRCC. According to the complaint he is being sued in both his individual and official capacities. He must remain a defendant in this action, except that any claim for damages against him in his official capacity must be dismissed.

### 3. Leann Bertsch

Ms. Bertsch is the Director of the NDDOCR. For the present, she should remain a defendant because she may be an appropriate defendant with respect to any injunctive relief that might be ordered should the defendant succeed on one or more of the claims that are allowed to go forward. With respect to any claims against her personally for damages, it is recommended that these be dismissed because there is no *respondeat superior* liability under § 1983 and Pipes has not pled her personal involvement or any other basis for holding her responsible. See Gordon v. Hansen, 168

---

[9] State officials acting in their official capacities are subject to suit under § 1983 for prospective injunctive relief, however. Will v. Michigan Dept. of State Police, 491 U.S. at 71 n.14; Ex parte Young, 209 U.S. 123, 159-60 (1908); Alsbrook v. City of Maumelle, 184 F.3d at 1010 & n.19; Campbell v. Arkansas Dept. of Correction, 155 F.3d 950, 962 (8 th Cir. 1998).

F.3d 1109, 1113 (8 th Cir. 1999); Madewell v. Roberts, 909 F.2d 1203, 1208 (8th Cir.1990); Martin v. Sargent, 780 F.2d 1334, 1337-39 (8th Cir.1985).

### 4. Virginia Kleven, Vicki Steckler, and Cathy Jensen

If the recommendations set forth above are followed, the claims against defendants Kleven, Steckler, and Jensen should be dismissed since they are not alleged to be involved in any of the surviving claims.[10]

### C. Pipes' children as named plaintiffs

Pipes' children should be dismissed as party plaintiffs for several reasons. First, they have no loss of consortium claim under § 1983 as a matter of law given the nature of the claims that are being made. See Helleloid v. Independent School Dist. No. 361, 149 F. Supp. 2d 863, 877 (D. Minn. 2001) (citing other cases); cf. Westcott v. Crinklaw, 133 F.3d 658, 660 (8th Cir.1998). Likewise, they have no derivative claim with respect to any state law claim that Pipes may be making. Butz v. World Wide, Inc., 492 N.W.2d 88, 92-92 (N.D.1992). Second, it does not appear from what is being pled that Pipes is attempting to assert claims, other than derivative claims, on behalf of the children, but, even if he is, the children have no conceivable claim as to the matters that will survive screening if the recommendations set forth herein are adopted.

Third, Pipes is obviously not a fit or proper person to litigate the claims on behalf of children given his prisoner status, the fact he is proceeding *pro se*, and the fact that he is not the parent or guardian with physical custody of the children. If the children have claims, they can be brought by the parent or guardian who has physical custody. Cartano v. Santa Clara County, 2002 WL 1677723, *2 (N.D. Cal. 2002) (upon review of a *pro se* complaint for permission to proceed *in forma*

---

[10] Cathy Jensen is not listed in the caption as a defendant, but it appears from the body of the complaint that Pipes intended to sue her as well.

*pauperis*, the court concluded that a parent proceeding *pro se,* who was not the parent or guardian with physical custody, was not the appropriate person to represent the named children and dismissed the complaint for this and other reasons grounds pursuant to 28 U.S.C. § 1915(e)).

## IV.     CONCLUSION AND RECOMMENDATION

Having conducted an initial review of Pipes' complaint, it is hereby **RECOMMENDED** that:

1. Pipes' children be dismissed as parties from the action without prejudice.

2. Pipes be permitted to proceed against defendant Don Redmann in his official and individual capacities and Leann Bertsch in her official capacity only with respect to the following claims:

    a. Claim #1 relating to the imposition of prison discipline;

    b. Claim #2 alleging denial of access to the courts;

    b. Claim #3 relating to alleged monitoring of attorney-client conversations; and

    c. Claim # 8 relating this his bad tooth.

3. All of the other claims and defendants be dismissed without prejudice for the reasons indicated above.

## V.     NOTICE OF RIGHT TO FILE OBJECTIONS

19

Pursuant to Local Rule 72.1(3)(4), Pipes may object to the above recommendations by filing written objections within ten (10) days after being served with a copy of this Report and Recommendation.  Failure to file appropriate objections, may result in the recommended action being taken.  If additional time is required, it may be requested.[11]

Dated this 10th day of December, 2007.

/s/ Charles S. Miller, Jr.
Charles S. Miller, Jr.
United States Magistrate Judge

---

[11] The normal time specified by Local Rule 72.1(3)(4) is ten days.  However, additional time is being granted given the allegations of difficulty in mailing material.  Also, if Pipes needs additional time, he may request it.